IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kristine M. ("Kristy") Ruff, | Civil Action No.: 6:15-cv-5004-BHH |
| Plaintiff, | |
| vs. | **ORDER AND OPINION** |
| Strategic Contract Brands, Inc., d/b/a Automotive Facilities and AutoStone Floor Systems | |
| Defendant. | |

This matter is before the Court on Defendant's motion to dismiss or, in the alternative, to transfer venue. (ECF No. 4.) For the reasons set forth below, the motion is DENIED.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Kristine M. Ruff ("Plaintiff"), a resident of South Carolina, is a former employee of Defendant Strategic Contract Brands, Inc. ("Defendant"), a corporation organized and existing pursuant to the laws of Texas, with its principal place of business in Dallas County, Texas. (Compl. No. 1-1 ¶ 2.) Plaintiff began working for Defendant on or about December 3, 2013 as its National Sales Manager and South East Regional Account Manager on a salary plus commission basis—she entered into a written Employment Agreement with Defendant on January 3, 2014. (*Id.* ¶ 5–7; ECF No. 4-3.) The Employment Agreement contains a choice of law and forum selection clause stating: "This Agreement is drawn to be effective in and shall be construed in accordance with

1

the laws of the state of Texas. Venue for any dispute arising out of or in any way related to this Agreement shall be in a court of competent jurisdiction in Dallas County, Texas." (ECF No. 4-3 at 7.)

According to Plaintiff, "Defendant unilaterally attempted to change Plaintiff's commission structure approximately six times throughout the course of her employment with Defendant, in an effort to reduce Plaintiff's commissions, without providing advanced, written notice of changes." (Compl. ¶ 9.) Plaintiff alleges that after she complained about these changes in the fall of 2014, Defendant's executives made various promises regarding her base salary and commissions to convince her not to leave Defendant's employment. (*Id.* ¶ 12.) Plaintiff further alleges she turned down another job opportunity based on these promises. (*Id.*) She alleges that Defendant's executives did not follow through with their promises, however, so she again voiced her concerns in the summer and fall of 2015. (*Id.* ¶ 13.) According to Plaintiff, she was terminated by a letter dated October 2, 2015, without cause and without any advance notice. (*Id.* ¶ 14.) Plaintiff filed this action against Defendant on November 5, 2015, bringing claims for violation of the South Carolina Payment of Wages Act ("SCPWA"), breach of contract, wrongful discharge in violation of public policy, promissory estoppel, equitable accounting, and fraud/fraud in the inducement.

On or about December 18, 2015, Defendant filed an action against Plaintiff in the District Court for Dallas County, Texas, alleging breach of contract. *Strategic Contract Brands, Inc. d/b/a Automotive Facilities and AutoStone Floor Systems v. Kristine M. ("Kristy") Ruff*, Case No. DC-15-15252, which was filed in the 134th Judicial District

Court, Dallas County, Texas, on December 18, 2015. After removing the case to federal court, Plaintiff moved to dismiss the action for lack of personal jurisdiction and for improper venue. On May 16, 2016, the United States District Court for the Northern District of Texas denied the motion and enforced the forum selection clause ("Texas Order"). (ECF No. 25-2.)

On December 18, 2015, Defendant also moved to dismiss Plaintiff's Complaint in this Court, asserting that the United States District Court for the District of South Carolina lacks personal jurisdiction in this case. (ECF No. 4-1 at 1.) In the alternative, Defendant asks that the Court transfer venue in this case to the Northern District of Texas, the forum the parties selected for litigation in the Employment Agreement. (*Id.*) Plaintiff filed a response on January 7, 2015 (ECF No. 12), to which Defendant replied on February 8, 2016 (ECF No. 16). Defendant also filed a motion asking the Court to allow it to file the above mentioned Texas Order on May 18, 2016. (ECF No. 25.) Plaintiff filed a response on June 17, 2016 (ECF No. 26), to which Defendant replied on June 22, 2016 (ECF No. 27). The Court has reviewed the briefing and the applicable law, and now issues the following ruling.

## STANDARD OF REVIEW

### A.     Personal Jurisdiction

When a court's personal jurisdiction is challenged, the burden is on the plaintiff to establish that a ground for jurisdiction exists. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When the court resolves the motion on written submissions (as opposed to an evidentiary hearing), the plaintiff need only make a "prima facie showing of a sufficient

jurisdictional basis." *Id.* However, the plaintiff's showing must be based on specific facts set forth in the record. *Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). The court may consider the parties' pleadings, affidavits, and other supporting documents but must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in his favor, and assuming plaintiff's credibility." *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 404-05 (D.S.C. 2012) (internal quotations omitted); *see also Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) ("In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff."). However, a court "need not credit conclusory allegations or draw farfetched inferences." *Sonoco*, 877 F. Supp. 2d at 205 (internal quotations omitted).

To meet his burden, Plaintiff must show (1) that the exercise of jurisdiction is authorized by the long-arm statute of the state and (2) that the exercise of personal jurisdiction complies with the constitutional due process requirements. *E.g., Christian Science Bd. Of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). South Carolina has interpreted its long-arm statute to extend to the constitutional limits of due process. *See Southern Plastics Co. v. Southern Commerce Bank*, 423 S.E.2d 128, 130-31 (S.C. 1992). Thus, the first step is collapsed into the second, and the only inquiry before the Court is whether the due process requirements are met. *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999).

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This standard can be met in two ways: "by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." *E.g., ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

A court can assert general jurisdiction over business entities only when the "continuous corporate operation within a state is thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2853–54 (2011) (holding that the "paradigm forum for the exercise of general jurisdiction" of a corporation is "one in which the corporation is fairly regarded as at home"). Thus, general jurisdiction requires a showing that "the defendant's activities in the state" were "continuous and systematic." *Carefirst*, 334 F.3d at 397 (quotation marks and citation omitted).

To determine whether specific jurisdiction exists, the Court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would

5

be constitutionally 'reasonable.'" *Id.* (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003)). This three-part test is designed to protect a defendant from having to litigate a suit in a forum where it should not have anticipated being sued. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277–78 (4th Cir. 2009).

    **B.    Venue**

Defendant moves to transfer this case to the District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Pursuant to 28 U.S.C. § 1391(a), a civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be heard. Whether a case should be transferred to an alternative venue rests within the sound discretion of the district court. *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

## DISCUSSION

### A.     Specific Jurisdiction

Plaintiff asserts that Defendant is subject to specific personal jurisdiction under the following provisions of the South Carolina long-arm statute:[1]

(1) transacting any business in this State;

(2) contracting to supply services or things in the State;

(3) commission of a tortious act in whole or in part in this State;

(4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State;

. . .

(7) entry into a contract to be performed in whole or in part by either party in this State;

S.C. Code Ann. § 36–2–803. Importantly, "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." S.C. Code Ann. § 36-2-803(B). As previously stated, South Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause. *See Southern Plastics Co.*, 423 S.E.2d at 130–31.

Here, the Court must examine three factors to determine whether specific jurisdiction is appropriate: First, to what extent did Defendant "purposefully avail" itself of the privileges of conducting activities in South Carolina and thus invoke the benefits and protections of its laws; second, did Plaintiff's claims arise out of those South Carolina-

---

[1] Plaintiff provides no argument for the existence of general personal jurisdiction.

7

related activities; and, finally, is the exercise of jurisdiction constitutionally "reasonable." *Carefirst*, 334 F.3d at 397.

In arguing for specific jurisdiction, Plaintiff alleges that: (1) Defendant is registered as a corporation in South Carolina with a designated agent for service of process; (2) Defendant recruited a South Carolina resident to be an employee; (3) Defendant mailed the original engagement letter and the Employment Agreement to Plaintiff's home in South Carolina; (4) Defendant provided Plaintiff with equipment so that she could establish a home office in Greenville, South Carolina; (5) Plaintiff's primary sales territory included South Carolina; (6) Defendant did over $270,000 worth of business in South Carolina in a three year period, "much of it sold directly by Plaintiff"; and (7) Defendant mailed the termination letter to Plaintiff's home in South Carolina. (*Id.* at 6–9.) Plaintiff contends that these contacts establish specific jurisdiction under S.C. Code Ann. § 36–2–803 (1), (2), (3), (4), (7).

Defendant responds that none of these alleged contacts are "substantial" and that they do not form the basis of any of Plaintiff's claims. (ECF No. 16 at 1–2.) Specifically, it asserts that "[o]f the approximately $10 Million in annual sales by [Defendant], only 4 sales—one each in 2012 and 2013, and two in 2014—have come from South Carolina." (ECF No. 4-1 at 2–3.) According to Defendant, Plaintiff is responsible for only two of those sales, "both in 2014, for a total of just over $134,000. This amounted to about 1% of [Defendant's] total sales." (*Id.* at 3.) Defendant asserts that there were no sales in South Carolina in 2015. (*Id.*) Defendant also states that it does not advertise in South Carolina and does not own any property in the state. (*Id.*) Defendant contends that this

case "is essentially a claim for unpaid, or underpaid, commissions, and that there is no connection between South Carolina and the sales on which Plaintiff claims to have been underpaid commissions." (ECF No. 16 at 2.) Finally, Defendant argues that the fact it is licensed to do business in South Carolina, without more, is insufficient to establish personal jurisdiction. (*Id.*)

Here, the Court agrees with Plaintiff that Defendant entered into a contract, i.e. the Employment Agreement, to be performed in whole or in part by Plaintiff in South Carolina, and, therefore, finds that S.C. Code Ann. § 36–2–803(7) confers jurisdiction over Defendant. In so finding, the Court is mindful that "[a] contract with a resident of a forum state does *not* automatically constitute sufficient contacts to support the forum's assertion of specific jurisdiction, even where the dispute arises from the contract." *Le Bleu Corp. v. Standard Capital Grp., Inc.*, 11 Fed. App'x. 377, 380 (4th Cir. 2001) (citing *Burger King*, 471 U.S. at 478); *Pan–American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 681 (M.D.N.C. 2011); *Burlington Indus., Inc. v. Yanoor Corp.*, 178 F. Supp. 2d 562, 567 (M.D.N.C. 2001). Here, however, the contract has a "substantial connection with" South Carolina such that the "quality and nature" of Defendant's relationship to the forum "can in no sense be viewed as random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 479–480 (citations omitted).

In looking to whether a defendant has purposefully availed itself of the protection of the laws of the forum state, the Fourth Circuit "has given great weight to the question of who initiated contact between the parties." *Worldwide Ins. Network, Inc. v. Trustway Ins. Agencies, LLC*, No. 1:04-CV-00906, 2006 WL 288422, at *5 (M.D.N.C. Feb. 6,

2006); *see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 n.17 (4th Cir. 2009) ("Pursuant to applicable precedent, we are entitled to accord special weight to the fact that it was [the defendant] that initiated contact with [the plaintiff] in [the forum state]." (citing *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir. 2000))). According to Plaintiff, Defendant initiated contact with Plaintiff in South Carolina, in an attempt to establish an employer-employee relationship. (ECF No. 12-1 ¶ 6.) This relationship was solidified in the Employment Agreement, which Plaintiff signed in South Carolina. (ECF No. 12 at 3.) Thus, the contract was partially entered into in South Carolina. *See* S.C. Code Ann. 36-2-803(7). Importantly, Plaintiff's claims arise in part out of Defendant's compliance with the terms of the Employment Agreement regarding her base salary, commissions, and employment benefits. (*See* ECF No. 1-1 ¶¶ 15-33); *see also* S.C. Code Ann. § 36-2-803(B).

While Defendant asserts that Plaintiff "could have performed her job from anywhere[,]" (ECF No. 4-1 at 7), Plaintiff's allegations indicate that she was expected to perform her job in part in South Carolina. For example, Defendant applied to register as a corporation in South Carolina around the same time that it recruited Plaintiff.[2] Specifically, Defendant applied to register as a corporation in South Carolina on October 14, 2013, and Plaintiff alleges that Defendant's owner, Barry Wells ("Wells") recruited her

---

[2] The Court agrees with Defendant that registering as a corporation in South Carolina, in and of itself, does not necessarily establish personal jurisdiction. *See Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir.1971) ("[T]he application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight . . . . Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another."); S.C. Code Ann. § 33–15–101, Reporter's Comments § 2 (Rev. 1990) ("A corporation can be qualified to do business in South Carolina and have appointed an agent for service of process but still not be conducting sufficient activities in South Carolina to be subject to suit here."). Here, however, the Court views this contact in the context of Plaintiff's other allegations.

in late October 2013. (ECF Nos. 12-1 ¶ 6; 12-2 at 2.) The timing of these two events supports a finding that Defendant recruited Plaintiff with the expectation that she would perform at least some work in South Carolina. Indeed, Plaintiff alleges that Defendant "specifically sought out a South Carolina resident to become an employee." (ECF No. 12 at 9.) In addition, Plaintiff's job title under the Employment Agreement was AutoStone National Sales Manager *and* Southeast Regional Sales Manager. (ECF No. 4-3 at 8.) Thus, the Court concludes Defendant expected Plaintiff to at least partially perform her work in the Southeast, including South Carolina. *See* S.C. Code Ann. § 36-2-803(7). Also, Plaintiff actually did perform work in South Carolina—the parties agree that she is responsible for at least two of the past four sales made in South Carolina. (ECF Nos. 4-1 at 3; 12 at 9.)

The above facts differentiate this matter from *Le Bleu*, the Fourth Circuit case upon which Defendant heavily relies to refute the existence of specific personal jurisdiction. (ECF No. 4-1 at 7–9.) In *Le Bleu*, the Fourth Circuit Court of Appeals affirmed the district court's finding that specific personal jurisdiction did not exist over the California-based defendant in North Carolina where the plaintiff alleged that: (1) "the parties exchanged some mail and telephone calls"; (2) "two visits were made to North Carolina by defendant's employees"; and (3) "a payment was mailed from North Carolina and . . . the contract was signed in North Carolina." *Le Bleu Corp.*, 11 F. App'x at 380. Notably, other than taking a draft of a memorandum to North Carolina for plaintiff's review, the defendant performed all of the work related to the contract in California— there was no indication the parties intended Defendant to perform work under the

11

contract in North Carolina. *Id.* at 379. Here, as explained above, Defendant's contacts with South Carolina were much more purposeful and substantial.

In sum, the Court finds that in entering into the Employment Agreement with Plaintiff in South Carolina, Defendant purposefully availed itself of the privileges of conducting activities in the state, and further, that Plaintiff's claims arise in part out Defendant's alleged noncompliance with this contract. The Court also finds that it is constitutionally reasonable to subject Defendant to the Court's jurisdiction on this basis. Analysis of the reasonableness of a court's jurisdiction over a nonresident defendant requires consideration of the burden upon the defendant, interests of the forum, the plaintiff's interest in obtaining relief, and the judicial system's interest in obtaining the most efficient resolution of controversies. *Asahi Metal Indus. Co., Ltd. v. Super. Ct. Cal.*, 480 U.S. 102, 113 (1987). "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on an alien defendant." *Id.*

Here, while Defendant has no property or current employees in South Carolina, it is a corporation that conducts business across the country. It has not alleged any significant burden in defending the action in South Carolina. Indeed, Defendant purposefully sought out a South Carolina resident as an employee and intended for that employee to perform work in South Carolina. Such purposeful contact indicates Defendant intended to invoke the benefits and protections of South Carolina laws. Further, South Carolina has an interest in providing Plaintiff, a citizen of the state, with a forum to resolve her grievances. While the Employment Agreement states that Texas

law applies to any disagreements arising from the contract,[3] Plaintiff also brings claims under South Carolina law, such as the violation of the South Carolina Payment and Wages Act. The exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice" under these circumstances. *Int'l Shoe*, 326 U.S. at 316.

### B.     Venue-Forum Selection

Having found that Defendant is subject to South Carolina's jurisdiction, the Court must decide whether the forum selection clause nevertheless necessitates transferring venue to the Northern District of Texas, as argued by Defendant. (ECF No. 4-1 at 11.) The Employment Agreement states, "Venue for any dispute arising out of or in any way related to this Agreement shall be in a court of competent jurisdiction in Dallas County, Texas." (ECF No. 4-3 at 7.) Defendant argues that the forum selection clause is valid and that there are not any "extraordinary circumstances unrelated to the convenience of the parties [that] clearly disfavor a transfer." (ECF No. 4-1 at 12 (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 574 (2013))). Plaintiff responds that the clause is unenforceable because it is both invalid and unreasonable. (ECF No. 12 at 13–21.)

Forum selection clauses are governed by federal law. *See Atl. Floor Servs., Inc. v. Wal–Mart Stores, Inc.*, 334 F. Supp. 2d 875, 877 (D.S.C. 2004); *Scott v. Guardsmark Sec.*, 874 F. Supp. 117, 120 (D.S.C. 1995). A forum selection clause is *prima facie* valid and enforceable when made in arms-length transactions by sophisticated business entities absent some compelling and countervailing reason. *Atl. Floor Servs.*, 334 F. Supp. 2d at 877. Forum selection clauses are "*prima facie* valid and should be enforced

---
[3] The Court discusses this clause of the Employment Agreement further below.

unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972). Forum selection clauses may be considered unreasonable if:

> (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

*Id.*

As an initial matter, the Court finds that the forum selection clause is not *prima facie* valid. As Plaintiff contends, the forum selection clause was not made in an arms-length transaction by sophisticated business entities. Plaintiff alleges that the forum selection clause was not included in the "letter of engagement" presented at the beginning of her employment. (ECF No. 12 at 14.) Rather, the clause was later thrown into a memorialization of the preexisting agreement made between the parties about Plaintiff's employment. When Defendant mailed Plaintiff the Employment Agreement a month after she began working, Plaintiff could either accept the terms of the contract or reject them and lose her job. At that point, Plaintiff was at a clear disadvantage relative to Defendant, a sophisticated business entity. Under such circumstances, the forum selection clause does not receive the same assumption of enforceability that it otherwise might have if it had been part of the negotiations between the parties before Plaintiff began her employment and if Plaintiff was a sophisticated business entity. *See Scott v. Guardsmark Sec.*, 874 F. Supp. 117, 120 (D.S.C. 1995) (finding that the contract made in an employer-employee relationship was not one of sophisticated business entities

14

negotiating at arms-length and noting that "the courts must protect the rights of employees from abuse by employers who have more resources at their command").

Further, the Court finds that the selected forum is gravely inconvenient to Plaintiff. Here, Plaintiff asserts that her new job pays "substantially less" than that earned in her previous employment. (ECF No. 12-1 ¶ 20.) According to Plaintiff, she has been unemployed at least three months prior to starting her new job and has run through "much of her savings and [] incurred substantial debts" during that time. (*Id.*) Consequently, she alleges it "would be a tremendous hardship for [her] to have to hire an attorney in Texas and travel to Texas for court proceedings in this case." (*Id.* ¶ 19.) In addition, Plaintiff resides in South Carolina and alleges that she has not traveled to Texas since she left Defendant's employment. (*Id.* ¶ 11.) She alleges that when she was required to travel to Texas for business, Defendant paid for her travel expenses. (*Id.*) Plaintiff's poor financial situation essentially precludes her ability to travel to Texas to have her day in Court.

The Court is also concerned by the apparent unfairness of the selected forum given that it would necessarily limit some of Plaintiff's claims. Specifically, Plaintiff alleges claims for violation of the SCPWA and wrongful discharge in violation of South Carolina public policy. (ECF No. 1-1 ¶¶ 15-22, 34-38.) Such claims would not survive in the selected forum if Texas law were applied, as required in the Employment Agreement's choice of law provision. The significant inconvenience and unfairness of the selected forum, in addition to the lack of *prima facie* validity of the forum selection clause, lead the Court to find that the forum selection clause is unenforceable here.

Defendant argues that transfer of venue is also required for the convenience of parties and witnesses under 28 U.S.C. § 1404(a). However, Defendant provides no analysis under this statute, and instead relies on the forum selection clause as reason to transfer venue. (ECF Nos. 4-1 at 11–12; 16 at 3–6.) Upon careful consideration, the Court finds that Defendant has failed to show that the "balance of convenience in the interest of justice favor[s] trial in the transferee forum." *Joye v. First Commodity Corp. of Boston*, 81 F.R.D. 118, 124 (D.S.C. 1978) (applying § 1404(a) and stating that, "The real test of whether an action should be transferred to another jurisdiction is one of balancing convenience between moving party and the plaintiff. . . . Defendant must make a clear cut showing that the balance of convenience in the interest of justice favor trial in the transferee forum") (citations omitted); *see, e.g., Cunningham v. Ford Motor Co.*, 413 F. Supp. 1101, 1105–06 (D.S.C. 1976) ("The plaintiff has the initial right to select the forum he desires, and that selection is entitled to great weight; 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947))). Accordingly, the Court declines to transfer venue in this action.

As a final matter, the Court has read Defendant's letter and the attached Texas Order related to Defendant's motion to file a letter advising the Court of an order in related litigation (ECF No. 25) and GRANTS this motion. However, as Defendant acknowledges, the Court is free to give the Texas Order "whatever consideration the Court determines appropriate." (ECF No. 27 at 1.) The Court has clearly drawn a different conclusion regarding the enforceability of the forum selection clause. However,

the only claims at issue in the Texas case are Defendant's tort claims, which can be addressed under Texas law or South Carolina law. Further, Plaintiff alleges that the Texas case involves events that occurred only after Plaintiff's employment ended. Thus, the Texas case lacks the substantial ties to South Carolina that are present here. The Court has therefore not afforded any significant weight to the findings made in that Order.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Defendant is subject to personal jurisdiction in South Carolina and that the forum selection clause is unenforceable in this instance. The Court further declines to transfer venue under 28 U.S.C. § 1404(a). Defendant's motion to dismiss and/or transfer venue (ECF No. 4) is therefore DENIED.

**AND IT IS SO ORDERED.**

/s/Bruce Howe Hendricks
United States District Judge

Greenville, South Carolina
August 12, 2016